UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID TAYLOR, II,

       Petitioner,

v.

CAROL HOWES,

       Respondent.

_____/

CASE NO. 11-12668
HONORABLE DENISE PAGE HOOD

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
BUT GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner David Taylor, II, has filed a *pro se* habeas corpus petition challenging his state convictions for felon in possession of a firearm, Mich. Comp. Laws § 750.224f, assault with a dangerous weapon, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. He alleges that evidence of his prior "bad acts" deprived him of a fair trial, that his trial attorney was ineffective for failing to object to the "bad acts" evidence, and that the trial court violated his right to due process by requiring a defense witness to appear in shackles at his trial. Respondent Carol Howes urges the Court to deny the habeas petition for lack of merit. The Court agrees that Petitioner's claims do not entitle him to habeas corpus relief. Therefore, the petition is denied. A procedural history and analysis follow.

## I. BACKGROUND

Petitioner was charged in St. Joseph County, Michigan with felon in possession of

a firearm, assault with a dangerous weapon, obstruction of justice, and felony firearm. The charges arose from

> an altercation that occurred between [Petitioner] and his live-in girlfriend, Trisha, on August 8, 2008. On that date, the two were in the process of moving out of the home they shared when they began arguing. [Petitioner's] cousin, Josh, was also present at the home. The argument escalated to the point where [Petitioner] allegedly hit Trisha. The two were still arguing inside the home when, according to Trisha, [Petitioner] pointed a gun at her and told her he was going to kill her. [Petitioner's] sister arrived after the couple moved their argument outside and testified that she heard [Petitioner], once again, threaten to kill Trisha, though [Petitioner] did not have a weapon in his hands at the time this second threat was allegedly made. Josh testified that he was present during the entire incident and that there was no weapon involved at any time, nor did he hear [Petitioner] threaten to kill Trisha.

*People v. Taylor*, No. 291949 (Mich. Ct. App. Oct. 19, 2010) (unpublished).

On March 4, 2009, the jury acquitted Petitioner of obstruction of justice, but found him guilty, as charged, of felon in possession of a firearm, assault with a dangerous weapon, and felony firearm. The trial court sentenced Petitioner to concurrent terms of 366 days to five years in prison for the felon-in-possession conviction and 366 days to four years in prison for the assault conviction. The trial court sentenced Petitioner to a consecutive term of two years in prison for the felony firearm conviction.

Petitioner raised his habeas claims in an appeal of right, but the Michigan Court of Appeals affirmed his convictions. The Court of Appeals stated that there was no error in the admission of "other acts" testimony and that Petitioner's right to due process was not violated by the shackling of a defense witness. *See id.* On March 8, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Taylor*, 488 Mich. 1050; 794 N.W.2d 333 (2011) (table).

2

On June 20, 2011, Petitioner filed his habeas corpus petition in this Court. Respondent argues in an answer to the petition filed through counsel that Petitioner's claims fail on the merits. Although the Michigan Court of Appeals reviewed both of Petitioner's claims for "plain error" due to Petitioner's failure to preserve the issues for appellate review, Respondent has not argued that Petitioner's claims are procedurally defaulted. Procedural default, however, is not a jurisdictional matter, and the Court is not required to raise the issue *sua sponte*. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). The Court therefore proceeds to the substantive merits of Petitioner's claims, using the following standard of review.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

> decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. DISCUSSION

**A. The Evidentiary Claim**

Petitioner alleges that the prosecutor deprived him of a fair trial by commenting on Petitioner's status as a prior felon[1] and by eliciting evidence that Petitioner committed prior "bad acts." According to Petitioner, the prosecutor contaminated his trial by vilifying him as a dangerous felon and by inducing the jury to convict him on the basis of unproven prior

---

[1] The prior conviction was for resisting and obstructing an officer, causing injury. *See Voir Dire* Tr., 29, Mar. 3, 2009.

4

assaults on the complainant, Trisha Cooley. Petitioner contends that the "bad acts" evidence was irrelevant and highly prejudicial and that the prosecutor failed to give proper notice of his intent to introduce the evidence. Petitioner also asserts that, without a limiting jury instruction, there was nothing to prevent his jury from giving *carte blanche* treatment to the improper "bad acts" evidence.

The Michigan Court of Appeals thoroughly discussed this issue under state law and concluded that the admission of the challenged evidence was proper. This Court finds no merit in Petitioner's claim because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court precedent barring the use of "bad acts" evidence on constitutional grounds, Petitioner is not entitled to relief on his evidentiary claim. His disagreement with the state court's ruling on "bad acts" evidence involves no constitutional dimension and, therefore, is not a cognizable claim on federal habeas corpus review. *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007).

Even if the claim were cognizable on habeas review, it lacks merit for the following reasons. The Court cannot grant relief on the basis of the prosecutor's alleged violations of the Michigan Rules of Evidence and other provisions of state law, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764,

780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

While it is true that habeas corpus relief may be warranted if an evidentiary ruling was "so egregious that it result[ed] in a denial of fundamental fairness," *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), evidence of, and comments on, Petitioner's prior conviction were necessary to establish the charge of felon in possession of a firearm. As for the prior physical abuse, the testimony on this matter did not permeate the trial, as Petitioner contends. Trisha Cooley testified that Petitioner had been hurting her for about a year and a half to two years. (Trial Tr. Vol. I, 73, Mar. 3, 2009.) She also claimed that the incident on August 8, 2008, was not the first time that Petitioner had been enraged and abusive, but then apologetic. (*Id.* at 36.)

Tracy Cooley (Trisha's father) testified that he had seen bruises on Trisha (*id.* at 103), that there were times when Trisha had called for help and he had to pick her up because Trisha and Petitioner were not getting along (*id.* at 104-05), and that August 8, 2008, was not the first time Petitioner beat Trisha (*id.* at 119). Neither Trisha Cooley, nor Tracy Cooley, elaborated on the subject of Petitioner's past physical abuse of Trisha, and neither one of them provided any further details about the prior abuse.

Petitioner himself admitted at trial that he was a "hothead." He also admitted that, on August 8, 2008, he threatened to kill Trisha, he threw his phone at her and hit her in the face with it, and he slapped her on the face with his open hand. Given these admissions and the limited extent of the testimony concerning Petitioner's prior abuse of Trisha Cooley, the admission of "bad acts" evidence was not fundamentally unfair. (Trial Tr. Vol. II, 33, 36,

43, 52-53, Mar. 4, 2009.)

In conclusion, Petitioner's evidentiary claim is not cognizable on habeas review and, even if it were, the alleged errors did not deprive him of a fair trial or due process of law. The Court therefore denies relief on the basis of Petitioner's claim that the prosecutor commented on Petitioner's prior conviction and elicited evidence of Petitioner's uncharged, prior "bad acts."

## B. Trial Counsel

Petitioner alleges that his trial attorney was ineffective for failing to object to the "bad acts" evidence and for failing to request a cautionary jury instruction on the evidence. Petitioner contends that, if defense counsel had objected to the testimony, it is likely that the trial court would have excluded the evidence and that the jury would have acquitted him of the assault charge. The Michigan Court of Appeals determined on review of this claim that, because the challenged evidence was admissible, Petitioner's allegations about his trial attorney lacked merit.

### 1. Clearly Established Federal Law

To prevail on his habeas claim, Petitioner must show that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's

performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### 2. Application

As explained above, evidence of Petitioner's prior conviction was admissible to prove the charge that he was a felon and not eligible to possess a firearm. To his credit, defense counsel objected when the prosecutor made an argumentative comment about the prior conviction. (Trial Tr. Vol. II, 54, Mar. 4, 2009.) Counsel was not ineffective for failing to object to evidence that Petitioner had a prior conviction, because the prior felony conviction was an element of the felon-in-possession offense. *Stead v. United States*, 67 F. Supp. 2d 1064, 1078 (D. S.D. 1999).

As for the testimony about Petitioner's prior abusive treatment toward Trisha Cooley, the evidence was admissible under Mich. Comp. Laws § 768.27b, which states that,

> in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

This statute applied to Petitioner because he and Trisha Cooley were living together at the time of the crime and because Petitioner's alleged conduct of hitting Trisha, pointing

8

a gun at her, and threatening to kill her satisfied the definition of "domestic violence." See Mich. Comp. Laws § 768.27b(5)(a) (defining "domestic violence" as "causing or attempting to cause physical or mental harm to a family or household member" and "placing a family or household member in fear of physical or mental harm," among other things.

The disputed evidence nevertheless was subject to Michigan Rule of Evidence 403, which permits state courts to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As noted above, however, there were no specific details about Petitioner's prior conduct, and he admitted to threatening Trisha Cooley, throwing a phone at her, and slapping her on the face on the day in question. Thus, testimony that Petitioner had engaged in other abusive conduct was not unfairly prejudicial or misleading, and defense counsel's failure to object to the evidence or to request a cautionary jury instruction did not amount to ineffective assistance.

**C. Shackles**

Petitioner's final claim alleges that the trial court violated his right to due process of law by requiring defense witness Josh Lung to appear in shackles at Petitioner's trial. The Michigan Court of Appeals stated on review of this claim that the trial court erred by permitting Mr. Lung to be shackled during his testimony without first determining whether the shackles were necessary. The Court of Appeals concluded, however, that the error did not affect Petitioner's substantial rights because Mr. Lung's testimony was not critical to Petitioner's case and because the trial court gave an appropriate jury instruction prior to Mr. Lung's testimony.

9

The Constitution generally forbids courts from using shackles or other visible restraints on a defendant during trial. *Deck v. Missouri*, 544 U.S. 622, 626 (2005). Some federal circuit courts of appeal have extended this right to be free of shackles to defense witnesses. *See Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985) (collecting cases). But a federal habeas court may grant the writ only if the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Davis v. Straub*, 430 F.3d 281, 288 n.3 (6th Cir. 2005). The Supreme Court has not held that allowing a defense witness to appear in shackles deprives a defendant of due process and a fair trial. *Torrez v. McKee*, 601 F. Supp.2d 920, 924-25 (W.D. Mich. 2009). For this reason alone, Petitioner has no right to habeas corpus relief on the basis of his claim that a defense witness was shackled.

The trial court, moreover, gave the following cautionary instruction to the jury before Josh Lung testified:

> THE COURT: This is Joshua Lung. And Mr. Lung, as is obvious, is with the Department of Corrections right now on a charge that's completely unrelated to this case, and, therefore, he is in his Department of Corrections uniform and protective measures. He's in his shackles. That's part of their protocols.
>
> But the reason that he is in the Department of Corrections has absolutely nothing to do with this case; something completely different.
>
> So don't take anything from his dress or his condition in regards to Mr. Taylor's case and he's only offering testimony as to what he saw the day that he was there in August of 2008.

(Trial Tr. Vol. I, 146-47, Mar. 3, 2009.) In light of this jury instruction, no prejudice occurred as a result of Josh Lung appearing in shackles at Petitioner's trial, and the trial court did not deprive Petitioner of his right to due process.

## IV. CONCLUSION

The state appellate court's adjudication of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Therefore, the petition for a writ of habeas corpus (Docket No. 1, filed on June 20, 2011) is denied.

## V. CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or deserve encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability. However, because an appeal could be taken in good faith, Petitioner may proceed *in forma pauperis* on appeal. 28 U.S.C. § 1915(a)(3).

Dated: August 30, 2013  S/Denise Page Hood
Denise Page Hood
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 30, 2013, by electronic and/or ordinary mail.

                                  S/LaShawn R. Saulsberry
                                  Case Manager